BIG FOUR REALTY COMPANY, Composed of M. A. COOPER, Jr., Respondent, v. ELLA CLARK et al., Appellants.

St. Louis Court of Appeals, November 30, 1909.

1. **CONTRACTS: Ambiguity: Construction: When Question for Court and When for Jury.** The interpretation of writings is for the court, where they are ambiguous, or where they are ambiguous in their terms and the ambiguity can be resolved by reference to other parts of the writing or uncontroverted circumstances, but when there is any ambiguity in the writing, which may not be solved by reference to other parts thereof and the surrounding circumstances are controverted, the question of intention, with respect to such ambiguity, is for the jury.

2. **REAL ESTATE BROKERS: Waiver of Commissions: Correspondence Construed: Case Stated.** A broker had attempted to exchange defendants' property for other property, and had announced that he expected 2 1-2 per cent. commission. Less than a week afterwards, the deal having fallen through, the broker wrote to defendants, "Now I have a trade for you and am willing to give you all there is in it"; and stated: "I will give you his place clear and $2000 cash for your place clear. . . . I would want possession of your place this spring, and you could have possession of the other." The place referred to belonged to the broker's brother in another State who wished to move to the residence of the broker, and the broker had no interest in the land, and nothing to give in the transaction other than his commissions. In a subsequent letter the broker stated: "I am willing to give you all there is in it as we would rather have our holdings here"; and, "Should I get the place, I would prefer it not rented until my brother comes and decides what he wants to do." Held, that the letters showed the broker was not acting for plaintiffs, but was either acting for himself or for his brother, and proposed to waive his commission if an exchange were consummated, and the court, therefore, erred in refusing to direct a verdict for defendants.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED.

*Orr & Luster* for appellants.

(1)  Under the evidence in this cause, plaintiff was not entitled to recover. And the court erred in refusing peremptory instruction requested by defendants. McKinley v. Williams, 74 Fed. 95; Mechem on Agency, 300; Jewelry Co. v. Bertig, 81 Mo. App. 398; Elec. Co. v. Bry, 88 Mo. App. 136; Bank v. Haywood, 62 Mo. App. 550; Trust Co. v. York, 81 Mo. App. 342; Goode v. St. Louis, 113 Mo. 257; McMannus v. Gregory, 16 Mo. App. 375; Johnson County v. Wood, 84 Mo. 489; Insurance Co. v. Redman, 91 Mo. App. 49.  (2)  The contract in this case, as evidenced by the letters, is so plain and free from ambiguity that there is nothing to be "construed." But, even applying every rule of construction, only one conclusion can be drawn, and that one bars plaintiff's recovery. Anyway, the meaning of the letters written by the plaintiff was a question of law for the court and the court erred in submitting this question to the jury, and in refusing to give instruction No. 2, as requested by defendants.  See authorities cited under first point.  Wetmore v. Crouch, 150 Mo. 671; Drug Co. v. Saunders, 70 Mo. App. 221; Chapman v. Railroad, 114 Mo. 542; Fruin v. Railway, 89 Mo. 397; Dick Bros. v. Finnell, 39 Mo. App. 276; Lumber Co. v. Warner, 93 Mo. 384; James & Sons v. Fruit Jar Co., 69 Mo. App. 211.  (3)  Instruction No. 1, given at the request of the plaintiff, is in effect a peremptory instruction for plaintiff. It is not the law in this case. It is in conflict with instruction given on behalf of defendants.  (4)  The court erred in giving instruction No. 2, on its own motion.  It assumes as true in plaintiff's favor material questions at issue.  It puts the burden

of proof upon defendants. It is in conflict with instructions given on the part of defendants. It is prejudicial and confusing and is not the law in this case. 2 Ency. of Ev. 53; 3 Ency. of Ev. 515; 9 Cyc. 242; Clark on Contracts, 779; Voerster v. Kunkle, 86 Mo. App. 195; Casey v. Donovan, 65 Mo. App. 526; Livery Co. v. McKelvey, 55 Mo. App. 240. (5) The court erred in permitting the plaintiff to testify as to what he meant by the expressions in his letters to defendants, "I am willing to give you all there is in it." Plaintiff's unexpressed or secret intention or understanding could not control or vary or explain his expressed intention. The jury should not have been permitted to hear his explanation. It was prejudicial and a reversible error. 9 Ency. of Ev. 383; 9 Cyc. 245; Machine Co. v. Creswell, 58 Mo. App. 474; Hunt & Booth v. Hunter, 52 Mo. App. 268. (6) The instructions given on the part of defendants correctly declare the law. And under these instructions and the undisputed evidence, defendants were entitled to a verdict as a matter of law. Plaintiff was not acting as agent for defendants. His interests were those of his brother. If not financially interested, yet the whole case shows that he was working solely to make a good trade for his brother and not as the faithful and loyal agent of defendants. If he was pretending to be defendants' agent, he betrayed his trust, violated the contract duty of an agent and has forfeited every right to compensation. See authorities cited under first point. McKinley v. Williams, 74 Fed. 94; Mechem on Agency (1889), secs. 454 *et seq*; Tisdale v. Tisdale, 64 Am. Dec. 783; Smith v. Tyler, 58 Mo. App. 672.

*J. N. Burroughs* for respondent.

(1) The court committed no error in refusing instructions numbered 1 and 2, asked by appellants. These instructions are peremptory in character and unwar-

ranted. If there is a conflict in the evidence it must go to the jury. Gooch v. Hollan, 30 Mo. App. 450; Corey v. Railroad, 86 Mo. 635. (2) The language employed in plaintiff's letters is ambiguous, and it was proper to submit it to the jury for their construction, under appropriate instructions. The rule is well settled that ambiguous writings must be construed by the jury and not by the court. Elevator & Mfg. Co. v. Mertz & Hale, 107 Mo. App. 28; Wilcox v. Baer, 85 Mo. App. 587; Lime & Cement Co. v. Fire Proofing Co., 77 Mo. App. 21. Appellants having admitted the employment of plaintiff, the performance of the services, etc., it is then incumbent upon them to show that by mutual agreement the contract was abandoned for the purpose of this transaction. Therefore the instruction given by the court of its own motion is much more favorable to the appellants than the law warranted. Chouteau v. Iron Works, 83 Mo. 73. (3) Instruction numbered 1 given for plaintiff is based on the pleadings and the evidence and is correct. It submitted matters to the jury inferentially if not tacitly admitted in defendants' answer, and fully admitted in their evidence. This is a general instruction, perfunctory in character, but necessary to get the whole case before the jury. Appellants' objections to this instruction are frivolous, for the rule that the instructions must be taken together as a whole is so well settled that it requires no citation of authorities. But see Norton v. Kramer, 180 Mo. 536; Chambers v. Chester, 172 Mo. 461; Kennedy v. St. Louis Transit Co., 103 Mo. App. 1. (4) The burden of proof is upon the defendants to establish the affirmative defense by a preponderance of the evidence. Gray's Harbor Commercial Co. v. Bank, 74 Mo. App. 633; Whiteside v. Tall, 88 Mo. App. 168; Grier v. Railroad, 108 Mo. App. 565; Bank v. Taylor, 69 Mo. App. 99; Rivers v. Glass Co., 81 Mo. App. 374; State ex rel. v. Fidelity and Deposit Co., 94 Mo. App. 184. (5) Defendants first testified as to their understanding of

plaintiff's letters. If there was error in permitting plaintiff to testify as to what he meant by them, it was self-invited and appellants will not now be heard to complain. But we insist that it was not error to admit this evidence. Where ambiguity exists in a contract or in writings it is proper to admit evidence of what the parties intended. Elevator & Mfg. Co. v. Mertz, 107 Mo. App. 28; Frazier v. Railroad, 104 Mo. App. 355. Then again, the evidence of plaintiff touching that matter was entirely withdrawn from the jury by the instruction of the court, which told the jury to find for the defendants, if they (defendants) understood from the correspondence that plaintiff would charge them no commission on this deal, without regard to what plaintiff meant by his statements. Anderson v. Union Terminal Co., 161 Mo. 584.

NORTONI, J.—This is a suit by a real estate agent for commissions alleged to have accrued on account of a sale or exchange of real estate for the defendants. The plaintiff recovered and defendants appeal.

The plaintiff, Big Four Realty Company, operates as a real estate agent at West Plains, Howell county, Missouri. It appears that at the time involved in the present controversy the Big Four Realty Company was owned and controlled by M. A. Cooper, Jr.

The defendants resided at or near Iola, Kansas, and owned a farm of eighty acres near West Plains in Howell county, Missouri. The plaintiff real estate company, acting through its proprietor, M. A. Cooper, negotiated a trade or exchange of the defendants' lands with plaintiff's brother, W. R. Cooper, for lands owned by him in the State of Kansas. W. R. Cooper paid $3113.50 in cash as well in the exchange. Defendants, however, assumed a mortgage of $950 on W. R. Cooper's land in Ellsworth county, Kansas.

The petition avers in substance plaintiff is engaged in the real estate business and that the defendants em-

ployed plaintiff to sell or exchange their land in Howell county for other land; that in pursuance of such employment, the plaintiff effected an exchange of land between the defendants and W. R. Cooper, of the State of Kansas, in which the defendants' eighty acres of land in Howell county passed for a consideration of $4650; that the usual and reasonable commission of real estate agents on exchanges of property is 2 1-2 per cent on the consideration received. Wherefore, plaintiff earned and is entitled to receive a commission of 2 1-2 per cent on $4650 amounting to $116.25, for which judgment was prayed.

The defendants' answer admits that they employed plaintiff to act as their agent to sell or exchange their land referred to. It admits, too, that 2 1-2 per cent is a reasonable commission for such sales and that defendants expected to pay plaintiff such commission if a sale or exchange were effected by him while acting as their agent. It is averred in the answer, however, that plaintiff, M. A. Cooper, negotiated an exchange of lands with his brother, W. R. Cooper, and that in such exchange the plaintiff was not acting as the agent of the defendants for a compensation and it was understood and agreed between plaintiff and defendants in such transaction that plaintiff was to receive no commissions from the defendant. As stated above, the testimony shows, and it is conceded throughout the case, that M. A. Cooper, who was in fact operating in the real estate business under the name of the plaintiff real estate company had been given an agency by defendants to sell or exchange their Howell county land and that he had notified defendants that he would expect a commission of 2 1-2 per cent on the consideration at which their land was sold or exchanged; that the defendants, without formally agreeing thereto, tacitly acceded to 2 1-2 per cent as a reasonable commission for such services.

The plaintiff resided in West Plains, Missouri, and the defendants at Iola, Kansas; therefore, practically all of the evidence in the case consists of letters between the parties. It appears therefrom that in the latter part of December, plaintiff interested a Mr. Rogers in the defendants' land situated near West Plains and notified them of that fact. Mr. Rogers owned some land in Kansas and the proposition being considered was an exchange of his Kansas land for that owned by defendants in Howell county, Missouri. More or less correspondence was had between the parties touching this matter. Before an exchange was consummated, however, the Kansas land was sold to another party. Thereupon, January 2nd, the plaintiff, M. A. Cooper, Jr., wrote the defendants as follows:

"The 160 acres in Comanche county, Kansas, is sold. Now I have a trade for you and am willing to give you all there is in it. My brother has recently decided to come to this part of the country and engage in the real estate business with me. He owns 160 acres of land in Ellsworth county, Kansas, and as he is moving here to live would have our holdings here. His 160 is a good piece of land and the 160 acres laying right beside of it hardly as good a quarter as his, but has a small three room house and 40 or 50 acres broken out, I understand they have refused $3500 for this.

"This is located in a fine farming country, 5 miles from Genesee, land is advancing rapidly in that section and the place is worth $2500 in cash. He has $950 against his place, running for from 3 or 4 years, yet, but payments are to be made in yearly payments, if his mortgage can be paid off at any time, I will give you his place clear and $2000 in cash for your place clear but should it be possible that his loan cannot be paid I will give you the amount of his mortgage in cash or in other words in that case would give you $2950 and you assume the $950 against his, but I rather think that his mortgage could be paid off. I am writing him

to find out, however I will give a difference of $2000 in cash. He lives near Kanopolis, Kansas, and if you care to go down and look at the place, go direct to Kanopolis and write or wire him and he will meet you at Kanopolis and drive you down and show you the land any time, but as he expects to leave there for this place in about two weeks, this offer is only good until that time. There is no breaks or deep holes on his land, but is a good piece of land. He bought it to improve it for a home and intended to move on it this spring by holding the quarter two years. My judgment is it will bring you from $3500 to $4000 as land has developed in value and in the last three years. This is in Ellsworth county and if you know anything about the country around Genesee it is a fine farming country. This is extra fine piece of mow land and will rent without a fence or anything around, just like it is from $100 to $150 a year cash. Of course I would want possession of your place this spring and you could have possession of the other. Let me hear from you at once.

"There has been about 35 acres broken out on this place but has not been in cultivation for some two or three years, as it has been leased to a party for the grass."

The defendants answered this letter under date of January 6th as follows:

"I received your letter a few days ago and will go and see your brother's farm if you will come through with $300, more money. I don't care to trade a piece of land that is paying 6 1-2 per cent on my investment for one that is only paying 5 1-2 per cent on the investment. I will go out on the 15th of this month if your answer is favorable. I get to Genesee that evening. You know what my place is worth and you know that you was making a very light offer on it. McLelland wants to rent the place for three years at $300 a year and he is waiting for my answer on it. I got a letter from

Mr. Rogers on the 4th. I have received no more rent from McLelland. If I trade for your brother's land it will suit me to let the loan stand on the land. I can use the money. Please let me hear from you so I can go out on the next excursion."

Under date of January 8th, the plaintiff replied to the defendants' letter as follows:

"Your letter of the 6th just to hand this a. m. in reply will say that I think I made you a good offer, Mr. Clark, I am willing to *give you all there is in it,* as we would rather have our holdings here. My opinion is if the place down there had $500 spent on it it would rent for probably as much as yours, and would then sell for close to $4000. In a year or two, it will bring even more, as I understand the adjoining 1-4 has a small house and some broken out and was offered $3500 for it in cash, but I will say this, if you will go down there at once on receipt of this letter and like the place, I will give you $100 more than I offered you, while I think I offered you a good trade. I will give you $100 to trade with me right now.

"The fact of the matter is if you wait until the 15th I am afraid it will be too late as I have made another man an offer on a farm here and he is ready to go out and look at the place, and I am sure he will trade with me when he sees it. He would have closed the deal here without going out to see it on what I told him, but I insisted on him going to see it as I did not care to have him trade for anything on my judgment. He is after me every day to know if I am ready for him to go and I am simply holding him back till you go to look at the place.

"I have a man right in the valley above your place, who has 160 acres with fine improvements on and nearly all in cultivation that I can trade for a difference of $3500. He has a very fine barn and house and about 80 acres right in the valley, and as close to town as yours, but my idea was for my brother did not like

Realty Co. v. Clark.

the business after he comes here. He has always liked your place and says it is just as much land as he wants and I thought it would make him a nice home to go on if he wanted a farm.

"In regard to renting the place for three years I think a three year lease would be against you in regard to selling the place, as I would not want over a year's lease and very few others who would. Should I get the place I would prefer it not rented until my brother comes and decided what he wants to do. If you could go down at once and look at the place just write or wire my brother at Kanopolis when you would get to Genesee. Address your letter to W. R. Cooper, Kanopolis, Kansas, or your telegram the same, as they could phone a telegram out to him. Give him time to get it before you would get there and he could meet you in Genesee.

"I will await your reply before I start my man from here, but I do not feel like holding him much longer, I would like to hear from you by return mail. This is the best I can do and I think if you will go down and see the place you would like it and trade at once."

It appears one of the defendants, Mr. Clark, and the plaintiff's brother viewed the Kansas land together and consummated an exchange on January 12th, as under that date defendant Clark wrote the plaintiff the following letter:

"I will write you I have been to see you brother's land and we have made an agreement and terms of trade.

"I got his quarter section and he gives me $3113.50. He pays me $2150 and interest $13.50. This interest is for two months and twelve days and I assume the loan he is to have until 1st of February to get his deed in the bank the First National Bank of West Plains. We want you to draw up a contract that will be legal

and send it to me to sign and I will send them to W. R. Cooper to sign we want two, one each.    I wish you would send me the old deed so I can send it on to the bank  I want it to get the number off.

"Your brother had the advantage of me he knew of what my land is worth but if I have payed more and it is worth it will soon increase to what I have payed for it.

"He says he wants to get a loan and I told him he could have until February 26 or 27 just so I had the money by March 1st.    I wanted to use it at that day.

"This is all at present and hoping to hear from you soon I am yours truly."

In accordance with the agreement outlined in this letter, the farms were exchanged about the first of March thereafter and the money paid.    The plaintiff demanded his commission and the defendants refused to pay the same.    They insist that the plaintiff's ser-vices were rendered gratis in the particular deal mentioned and rely upon the letters above set out to sustain their theory of the case.    The words, "I am willing to give you all there is in it as we would rather have our holdings here," are especially relied upon by the defendants to support their theory that plaintiff agreed to charge no commissions if the exchange was made with his brother.    It will be remembered that it is conceded by defendants in the answer and throughout the case that they had given the plaintiff an agency to sell or exchange their land and that 2 1-2 per cent commission is a reasonable and just charge for such services.    It is conceded, too, that the plaintiff did make an exchange of the defendants' land to plaintiff's brother which was satisfactory to the defendants.    The only question at issue between the parties is as to whether plaintiff was acting gratis or was to have compensation.    The defendants argue that it is the duty of the court to construe the writings in evidence, that is, the letters, and that, therefore, the court should declare

as a matter of law that a fair construction of the language of defendant's letters, above set out, is unequivocal to the effect that plaintiff proposed to negotiate the exchange between defendants and plaintiff's brother without a commission. It is argued that as plaintiff said in his letter of January 2d, "Now I have a trade for you and am willing to give you all there is in it," and in the letter of January 8th that "I am willing to give you all there is in it as we would rather have our holdings here" and otherwise throughout the letters refers to the matter by using the pronoun, I, as, "I would want possession of your place this spring and you could have possession of the other, etc., etc.," it is obvious that plaintiff intended defendants should understand that no commission would be charged by him. It is said the trial court should have construed the plaintiff's letters in accordance with defendants' theory of the case and directed a verdict for them on the ground that it conclusively appears plaintiff was not acting as defendants' agent for commissions and that error was committed in submitting the issue to the jury. There can be no doubt of the general proposition that the interpretation and construction of writings in evidence is a question for the court, that is, where such writings are unambiguous, or where the writing is ambiguous in any of its terms and the ambiguity can be resolved by reference to other parts of the contract or circumstances which are uncontroverted by the evidence. However this may be, where there is an ambiguity in the writing and such ambiguity may not be solved by reference to other parts thereof and the surrounding circumstances are controverted, the question of intention with respect to such ambiguity is one for the jury. In such case, the court should charge the jury hypothetically as to the true interpretation of the writing. Where the terms of the writing are ambiguous and the intention of the parties may not be ascertained without resort to extrinsic facts which are controverted or unconceded, the

matter of intention is one of fact for the jury and not of law for the court. [Duetmann v. Kilpatrick, 46 Mo. App. 624; Blanke v. Dunnermann, 67 Mo. App. 591; Wilcox v. Baer, 85 Mo. App. 587.]

We are persuaded the court erred in overruling the defendants' request for a peremptory instruction and referring the question to the jury. When plaintiff's letters are construed in the light of other facts in the case, it is obvious that he had nothing to give the defendant in the transaction other than his commissions. His own testimony, and all else in the case for that matter, discloses that plaintiff had no interest whatever in his brother's land and he was, therefore, unable to give the defendant anything in the trade unless it was such commissions as were likely to accrue to him in negotiating the exchange. He opens the negotiations with this statement in this letter of January 2d, "Now I have a trade for you and am willing to give you all there is in it." Less than a week before, the plaintiff had written defendant that he would expect 2 1-2 per cent commission if a trade were made with Rogers. When the statement in the letter of January 2d to the effect that he was willing to give the defendants all there was in it is construed in the light of the statement made before that he would charge a commission if the trade were made with Rogers; it seems any reasonable person would be led to believe therefrom that plaintiff meant to concede his commissions if the trade were made with his brother. Furthermore, throughout this letter, its, tone and the use of the pronoun, I, indicate clearly that plaintiff had assumed the role of spokesman for his brother. He says, "I will give you this place clear and $2000 cash for your place, clear, etc." . . . "I would want possession of your place this spring and you could have possession of the other."

Now, even where an ambiguity appears in one portion of the writing, it is for the court to interpret the

matter thereof if the ambiguity can be resolved by reference to other parts of the same instrument. We believe when these other portions of the letter are looked to and all parts thereof are considered together in the light of the fact that plaintiff had no interest in the land and nothing to give in the transaction other than his commissions, any reasonable person would understand that he intended to concede his commissions on the trade. By reference to the plaintiff's letter of January 6th, it will appear that he said a second time, "I am willing to give you all there is in it as we would rather have our holdings here." This indicates that through his anxiety to aid his brother to acquire holdings in Howell county, where he intended to remove and engage in business, plaintiff was willing to give the defendants his interest or expectancy in the trade. In another portion of this same letter, plaintiff says, "Should I get the place, I would prefer it not rented until my brother comes and decides what he wants to do." This statement indicates most forcibly that plaintiff had assumed the role of agent for his brother and was standing in his position with respect to the proposed trade instead of for the interests of the defendants. Indeed, the frequent use of the pronoun, I, throughout these letters would lead any reasonable man to believe that plaintiff was not acting for the defendants but was either acting for himself or for his brother, and if he was either acting for himself or for his brother, certainly no commission should be paid by the defendants. When the letters are read together and the ambiguous words, "I am willing to give you all there is in it" construed in the light of other expressions, it is manifest that any reasonable person would understand plaintiff proposed conceding his commissions if an exchange were consummated, for he had no other interest to concede.

The judgment should be reversed. It is so ordered. All concur.