**STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Appellant,**

v.

**Robert W. JOHNSON, Carol Johnson, d/b/a Loutre Food Market, Frank Eggers, III, Marilyn Eggers, d/b/a Eggers Service Center, Defendants-Respondents.**

No. 39860.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 26, 1979.

Bruce A. Ring, Thomas E. Cheatham, State Highway Com'n, Jefferson City, for plaintiff-appellant.

J. B. Carter, Carter & Becker, Clayton, for defendants-respondents.

STEPHAN, Presiding Judge.

Plaintiff-appellant State Highway Commission appeals a jury verdict in the amount of $40,000 in favor of defendants-respondents Johnson and Eggers resulting from condemnation proceedings. The commission here contends that the trial court erred in denying its motion for a directed verdict, made at the close of all the evidence, for the reason that defendants failed to meet their burden of proving that they

had any compensable interest in the condemned property. For reasons hereinafter stated, we reverse.[1]

The condemned land was part of a tract of approximately four acres situated at the intersection of Highways 19 and 94 in Montgomery County near Hermann, Missouri. Defendants Robert and Carol Johnson and Frank and Marilyn Eggers operated commercial establishments (known respectively as the Loutre Food Market and the Eggers Service Center) on the tract pursuant to separate short-term leases from the fee owners, Junior and Fern Collins. The remainder of the four-acre tract was used primarily as a parking area for defendants' businesses. The commission filed a petition for condemnation on October 14, 1976, seeking to extinguish the interests defendants claimed, by virtue of their leases, in an L-shaped strip of land bordering each highway and varying in width to a maximum of approximately thirty feet. The condemned strip of land, part of the parking area, comprised approximately .77 acre.[2] The petition alleged that the commission had previously obtained the fee interest in the strip from the Collinses; exhibits subsequently introduced indicated that the commission had acquired the fee interest in the strip by warranty deed dated December 13, 1974, almost two years before it filed the petition to acquire defendants' claimed leasehold interest in the land.[3] The petition further stated that the land had been appraised and an offer made to defendants in the amount of the appraisal, but that negotiations for acquisition had been unsuccessful.

After a hearing, the strip of land was ordered condemned and commissioners were appointed. On November 4, 1976, the commissioners awarded $20,000 to the Johnsons and $3,750 to the Eggerses in compensation for the loss of their respective rights in the land. The commission and the defendants Johnson timely filed exceptions to the award and sought a jury determination of damages.

Trial was held on August 26, 1977. In a pretrial conference, the commission's motion for summary judgment, grounded on defendants' alleged lack of a compensable interest in the condemned land, was denied. The leases in question will be discussed in detail infra. Suffice it to say at this point that it was the commission's position that under the terms of the leases defendants' leasehold interests were restricted to the respective commercial establishments which they occupied and that defendants merely held a non-compensable interest, in the nature of a license, in the remainder of the tract, the parking area. Defendants argued that they thereby held a lease to the entire tract. In denying the commission's motion for summary judgment, the court initially ruled that the leases were ambiguous and that the commission could therefore submit the leases, and parol evidence as to their meaning, to the jury for a resolution of the issue. However, later in the same pretrial conference the court made a contrary ruling (on defendants' motion) that the commission could not, through submission of the leases or otherwise, introduce any evidence that defendants owned less than a fee interest in the four-acre tract. The court based this ruling on the theory that it is the province of the jury in condemnation proceedings merely to determine the damages in gross suffered by way of the taking;

1. A preliminary question was raised during the early stages of this appeal regarding the timeliness of the commission's notice of appeal. Defendants filed a motion to dismiss, alleging that the notice of appeal was filed one day out of time, which motion was denied by this court subsequent to the filing of a copy of a letter from appellant's counsel transmitting the notice of appeal. The letter bore a date stamp showing its receipt by the circuit clerk and was duly certified by the clerk. The denial of the motion to dismiss will not be further examined.

2. The petition also sought a temporary easement over an additional .81 acre during construction.

3. That deed was subsequently modified by quitclaim deed on September 15, 1976, in a manner not relevant to this discussion.

that such damages are to be calculated as if a fee interest were being condemned; and that a determination of the percentage of the total damages accruing to those claiming a lesser interest is to be made at a later time by the court. The issue of damages was therefore tried to the jury on that theory, and the leases were not submitted to it.

This case was further complicated by the fact that in April 1977 (subsequent to the condemnation but prior to trial), defendants Johnsons had purportedly purchased the fee interest in the *entire* four-acre tract from the Collinses. The Collinses and Johnsons had previously filed suit challenging the validity of the warranty deed under which the commission claimed fee ownership of the condemned strip. (That suit, grounded on alleged fraud and misrepresentation by the commission, was still pending at the time of trial in the instant case.) Therefore, while it was the position of the commission at trial that the leases gave defendants no compensable interest in the condemned land, defendants contended, on the basis of their alleged fee ownership of the entire tract, that they were entitled to the entire award of damages, rather than merely the share accruing to them as leaseholders.[4] The trial court apparently accepted defendants' argument, for it ordered the total subsequent jury award of $40,000 to be paid to defendants.

The sole point raised on appeal is that the trial court erred in failing to grant the commission's motion for directed verdict because defendants failed to sustain their burden of proving that they possessed any compensable interest in the condemned property.[5] MAI 3.02, Burden of Proof-Eminent Domain (1973 Revision), provides that a condemnee has the burden of proving "that he has sustained damage and the amount thereof." The commission points out that in the normal condemnation case the fact that defendant sustained *some* damage is a conceded element in the trial and the amount of damages is the sole issue for the jury's consideration. It contends, however, that in this case it at all times denied that defendants owned a compensable interest in the condemned land and that the fact, rather than the amount, of damage was the prime issue in the case.

■ The parties are in agreement that a leaseholder possesses an interest in property for which he must be compensated in condemnation; a mere licensee generally does not. See 26 Am.Jur.2d Eminent Domain § 177, pp. 854–856. We do not believe it necessary in this instance that we fully define both interests but we offer these contrasts between the two.

"It is said that the difference between a license and a lease is that a lease gives to the tenant the right of possession against the world, while a license creates no interest in the land, but is simply the authority or power to use it in some specific way. . . . The intent of the parties determines whether an agreement creates a lease or a license. Much emphasis is laid on the element of exclusiveness as a test of a lease." (Footnotes omitted.) Thompson on Real Property (1959 Replacement), Vol. 3, § 1032, pp. 104–105. "Whether a particular agreement is a lease or a license depends on whether or not it shows the intention to establish the relation of landlord and tenant, such intention being determined from a consid-

---

4. The Johnsons and the Eggerses were represented by the same counsel in these proceedings and had apparently reached agreement between themselves regarding division of the jury award. Apportionment between the two sets of defendants, in the capacity either of leaseholders or alleged fee owners, has never been an issue in this case.

5. The commission admits that, under *State ex rel. Weatherby Advertising Co., Inc. v. Conley*, 527 S.W.2d 334 (Mo. banc 1975), defendants originally possessed a compensable interest in two signs which were located on the condemned strip. After the initiation of these proceedings, the signs were relocated by mutual agreement at the commission's expense. The commission claims that defendants' compensable rights were thereby extinguished.

eration of the entire instrument, and the circumstances under which it was made. If the contract confers exclusive possession of the premises or a portion thereof as against the whole world, including the owner, it is a lease, while if it merely confers a privilege to use or occupy under the owner it is a license. It has otherwise been stated that a lease differs from a license in that a lease of land conveys an interest in the land, requires a writing to comply with the statute of frauds, and transfers possession, while a license merely excuses acts done by one on land in the possession of another that without a license would be trespasses, and conveys no interest in land. Definiteness of the space to be occupied is one of the criteria for determining whether the instrument is a lease." (Footnotes omitted.) 51C C.J.S. Landlord & Tenant § 202(6), pp. 524–526.

A license is merely a privilege to enter certain premises for a stated purpose. *Wandell v. Ross*, 241 Mo.App. 1189, 245 S.W.2d 689, 692[4] (1952). Generally, that privilege is revocable by the licensor. Nichols, The Law of Eminent Domain, 3d Ed., Vol. 2, § 5.751, p. 241; Thompson (1939 Ed.), Vol. 1, § 318. See also 49 Am.Jur.2d, Landlord and Tenant § 5, p. 45.

In the light of the above principles, we concur with the trial court's initial pretrial ruling that the leases do not establish the intent of the parties in this regard as a matter of law. The Johnson lease, executed October 1, 1970, provided that the Collinses demised and leased to the Johnsons "the premises located in Montgomery County, Missouri, described as follows: The First floor and basement of premises situated on property described as: . . ." There followed a very rough description of the tract in question. The lease further stipulated that: "The rent shall be Eight Hundred Dollars per month, for the first floor of said leased premises and One Hundred Dollars per month for the basement of said leased premises . . ." Though these paragraphs, by their terms, appear to restrict the lease to the building involved, the document as a whole evinces clear recognition that the Johnsons were to have the use of the parking area. The Johnsons had the duty to "provide all maintenance to the area occupied by them excepting the sidewalks and parking area," to keep "the premises and building free and clear of filth and rubbish," and to clear the parking area of snow and ice with equipment furnished by the Collinses. The lease further provided that a certain specified portion of the parking lot was to be reserved for tenants of the second floor of the building. The lease was to run for a term of five years, with an option to renew for another five-year period. The Johnsons exercised the option on August 1, 1975, before the initiation of the condemnation proceedings.

Under the second lease, executed on October 1, 1973, the Collinses demised and leased to the Eggerses "the premises . . . described as follows: A metal building 50′ × 100′ in size situate in section 23, Township 46, Range 5 described more particularly as follows: . . ." There again followed a rough description of the tract. Rent was to be $400 per month for the building, which was stated to be in the process of construction and due to be completed by October 1. The document contained similar references to the parking area, with the added stipulation that "the parking lot shall be subject to co-use of the tenants occupying the Loutre Market Building." The Eggers lease was also to run for five years with a five-year renewal option.

■ The area involved is described in both leases in very vague or incomplete terms. In leasing to the Eggerses three years after the Johnson lease went into effect, the Collinses not only carved out an area measuring 50 × 100 feet for the construction of a building on what was formerly parking space; they also gave the Eggerses a use, coextensive with that of the Johnsons, in the remainder of the parking area. The Johnsons have never objected to

that "appropriation" of the land, and in fact exercised their option to renew subsequent to the creation of the Eggers lease. We believe the above facts to be indications that the parties did not intend that defendants were to have exclusive control over the parking area, the hallmark of a lease. However, the documents clearly recognize that defendants' commercial establishments were to be furnished at least reasonable parking facilities. We believe that over such "reasonable" parking area defendants did possess exclusive control against the Collinses under the terms of the leases. Because of this ambiguity in the leases, they did not establish as a matter of law that the parties intended that the defendants were to possess a leasehold interest in that portion of the parking area which was condemned.

The issue therefore was one of fact which should have been submitted to the jury.

> "The better rule, when there remains an issue of contractual intent, is to submit the issue to the jury unless the evidence is so clear that no reasonable person would determine the issue but one way." *Singer Co. v. E. I. du Pont de Nemours & Co.*, 579 F.2d 433, 439[4] (8th Cir. 1978).

See also *Big 4 Realty Co. v. Clark*, 145 Mo.App. 632, 123 S.W. 95, 98 (1909). Defendants made no attempt to bring the leases, and parol evidence as to their meaning, before the jury.[6] There is no other evidence in the record to establish the nature of defendants' interest in the condemned land. Defendants therefore did not meet their burden of proof on the issue of whether they held a compensable interest in that land and the commission's motion for a directed verdict should have been granted.

█ In reversing, we note parenthetically that even had we construed the leases to confer on defendants a leasehold interest in the parking area, we would have remanded nevertheless under Rule 84.13(c) for a proper assessment of damages. Defendants were not entitled under any circumstances to $40,000, which the jury determined to be the damages incurred under the theory on which the case was tried, i. e., as though a fee interest in the strip were being condemned. As noted, supra, defendants claimed that they were entitled to the entire award, rather than merely the leaseholders' share, on the strength of the deed to the four-acre tract which the Johnsons received from the Collinses in April 1977. The State Highway Commission, however, had paid the commissioners' award of $23,-750 into the registry of the court on November 10, 1976. The transfer of ownership interest in property occurs at that time, *Harris v. L. P. and H. Construction Co.*, 441 S.W.2d 377, 384 (Mo.App.1969); *St. Louis Housing Authority v. Barnes*, 375 S.W.2d 144, 147 (Mo.1964); and compensation is to be determined as of the date of that taking, *Western Robidoux Printing & Lithograph Co., Inc. v. Missouri State Highway Commission*, 498 S.W.2d 745, 748 (Mo. 1973). Defendants therefore lost and could be compensated only for those interests, if any, which they possessed by virtue of their leases at the time of the taking.

█ As indicated, fee ownership of the condemned strip was in dispute at the time of this trial in the form of the pending suit brought by the Collinses and Johnsons to contest the validity of the deed under which the commission claimed such interest. The outcome of those proceedings is unknown to this court. If it was determined therein that the commission's deed was valid, there is no problem. If, however, that deed was determined void, the Johnsons are (through their April 1977 deed from the Collinses) presumably still the rightful fee owners of the entire tract, including the strip which the commission sought to condemn. This is so because, as noted supra, the transfer of ownership in property occurs at the time

---

6. Indeed, by their pretrial motion, defendants induced the trial court's ruling that the leases could not be placed before the jury.

the commissioners' award is paid into the registry of court. The Johnsons' acquisition of the fee interest subsequent to that date could therefore not possibly effect the transfer of that fee interest to the commission through the current condemnation proceedings. It follows then that if the commission's deed of December 1974 was determined invalid, the commission has yet to acquire any interest whatsoever in the disputed strip of land and must hereafter obtain fee title in the property from the Johnsons or the current rightful owner.

The judgment of the trial court is reversed.

STEWART and SATZ, JJ., concur.