STATE OF MISSOURI at the relation of STATE HIGHWAY COMMISSION v. UNION ELECTRIC COMPANY OF MISSOURI and ST. LOUIS UNION TRUST COMPANY, Trustee, Appellants.—148 S. W. (2d) 503.

Division One, March 13, 1941.

*Igoe, Carroll, Keefe & McAfee* and *J. W. McAfee* for appellants.

· *Louis V. Stigall,* *Ralph M. Eubanks* and *Smith B. Atwood* for respondent.

BRADLEY, C.—This cause was commenced to condemn certain land for state highway purposes. Commissioners were appointed and assessed defendants' damages at $3150. Plaintiff filed exceptions to the report. A jury trial was waived, and the cause tried

before the court, resulting in a finding that defendants were "not damaged by reason of the appropriation of the real estate described in plaintiff's petition" for the reason that they had "no right, title or interest in and to said real estate." Defendants appealed separately and the appeals were numbered separately here, but there is only one cause. ▮ Defendant, Union Electric Company, claimed a fee interest in the land, hence title was involved and was determined, and jurisdiction of the appeal is in the Supreme Court. [Art. 6, Sec. 12, Constitution.]

The trust company was made a party defendant because it is the trustee in a deed of trust given by defendant, Union Electric. Hereinafter, the term *defendant*, referring to a party to this cause, has reference to the Union Electric.

Prior to January 18, 1932, the St. Louis Public Service Company and its predecessors, from a point (Hanley Road) in St. Louis County, operated an interurban railroad to St. Charles, Missouri, but on the date mentioned the St. Charles line was abandoned, and the public service company moved its poles, wires, and other equipment from the portion abandoned.

June 21, 1913, the Missouri Electric Railroad Company, the immediate predecessor of the St. Louis Public Service Company, granted permission to defendant to construct a transmission line on the interurban right of way from Hanley Road to St. Charles, and since 1916, the transmission line has been on land here involved. August 5, 1930, and in January, 1931, the St. Louis Public Service Company and defendant entered into further agreements concerning the occupancy of the land by the transmission line.

There are two parcels of land involved, and these are designated as tracts 1 and 3. November 15, 1900, and February 4, 1901, Frederick Luecke and wife, by general warranty deeds, and for the recited considerations, respectively, of $211.60 and $50, conveyed to the St. Louis, St. Charles & Western Railroad Company, a strip of land 25 feet in width and about 1850 feet in length, and a somewhat triangular piece of land about 385 feet in length, and with a width from 25 to 50 feet. The lands described in the Luecke deeds constitute tract No. 1.

November 10, 1900, William Branneky and wife, by general warranty deed, and for the recited consideration of $500, conveyed to the St. Louis, St. Charles & Western Railroad Company, a strip of land 100 feet in width and 3250 feet in length. March 5, 1911, the Brannekys executed a general warranty deed to the Missouri Electric Railroad Company which recites a consideration of $175, and also recites that the land conveyed was "the same *right of way* (italics ours) conveyed" by them to the St. Louis, St. Charles & Western Railroad Company on November 10, 1900. September 28, 1912, the Brannekys, by general warranty deed and for the recited con-

sideration of $724, conveyed to the Missouri Electric Railroad Company, a strip of land 50 feet in width and 2100 feet in length, which joined on the north, the 3250 foot strip. Tract No. 3 is embraced within the descriptions in the Branneky deeds.

February 25, 1902, the St. Louis, St. Charles & Western Railroad Company, grantee in the Luecke deeds, and the first Branneky deed, gave a deed of trust to the Colonial Trust Company. The deed of trust recited that it covered all *rights of way* theretofore granted to it, and described in deeds mentioned therein. Several deeds are referred to, and among them are the Luecke deeds and the Branneky deed of November 10, 1900. The deed of trust was foreclosed July 24, 1905, and among the descriptions in the trustee's deed was this: "Also all of *the right of way* (italics ours) heretofore granted to said railroad company . . . in deeds" named, and among the deeds named were the Luecke deeds and the first Branneky deed.

The trustee's deed, on foreclosure of the deed of trust, was to Festus J. Wade, and Wade and wife, by quitclaim, conveyed to Richard McCulloch July 9, 1908. McCulloch and wife, July 11, 1908, conveyed by quitclaim to the Missouri Electric Railroad Company, and among the descriptions was that contained in the deed of trust, supra. December 31, 1928, the Missouri Electric Railroad Company, by quitclaim, conveyed to the St. Louis Public Service Company.

It would appear from the record that in 1938, the affairs of the St. Louis Public Service Company were in the bankruptcy court, St. Louis. March 23, 1938, the court, on petition of the trustee, directed the *debtor* and the trustee to quitclaim to the State of Missouri, for a consideration of $200, the land here involved, and the petition of the trustee for the order, and the order, referred to the land as "the abandoned *right of way* (italics ours) of the debtor." The quitclaim was made in accordance with the order. Also, the State acquired by deed whatever interest, if any, that *reverted* to the Lueckes and the Brannekys when the St. Louis Public Service Company ceased operations over the land involved.

Defendant makes two contentions, viz.: (1) That the Missouri Electric Railroad Company, by virtue of the Luecke and Branneky deeds, owned the *fee* in the land involved, and on June 21, 1913, granted to defendant a perpetual easement therein; and (2) that, in any event, defendant has acquired an easement by prescription. On the other hand, plaintiff contends: (1) That the interurban railroads, notwithstanding the Luecke and Branneky deeds, never had more than an *easement* in the land, and that when the St. Louis Public Service Company *abandoned* operation on this right of way, whatever interest it had therein *reverted* to the Lueckes and the Brannekys; and (2) plaintiff denies that defendant acquired an easement by prescription.

Did the Luecke and Branneky deeds convey the fee? By their terms they did, but does that fact settle the question? We think not.

Article 3, chapter 12, R. S. 1899, now Article 5, chapter 32, R. S. 1929, relates to street railroads. Section 1187, R. S. 1899 (of Art. 3, chapter 12, R. S. 1899), now Section 4911, R. S. 1929, 3 Ann. Stat., p. 2232 (of Art. 5, chapter 32, R. S. 1929), among other things, provided that every corporation formed under Article 3, had power "to acquire by grant a *right of way* (italics ours) not to exceed fifty feet in width over private property, and to construct or maintain and operate its road thereon."

■ "The same title or rights that would have been acquired by condemnation proceedings are generally acquired by a railroad company under a grant or conveyance of land for a right of way, the nature and quality of the right or title that may be acquired being usually fixed by the company's charter or governing statute. Accordingly, where it is so authorized by its charter or by statute, a railroad company, although created for a limited period, may acquire a fee simple title in land for its right of way, depot grounds, and other railroad necessities, by purchase, and this right is not affected by the fact that the company may obtain only an easement or determinable fee if it resorts to condemnation proceedings. ■ Where there has been a grant or conveyance of land to a railroad company, the question as to what estate or interest is thereby acquired by the company must be determined from the intention of the parties as shown by the whole instrument, as construed in connection with the railroad company's charter or governing statutes, and, in case of ambiguity, with the accompanying circumstances. As thus construed the grant or conveyance may convey the title in fee (or) a mere easement." [51 C. J. 535, 536.]

Chouteau v. Mo. Pac. Ry. Co., 122 Mo. 375, 22 S. W. 458, 30 S. W. 299, involved a question quite like the one here. By *the terms of the deed* in that case, the owner conveyed the *fee* to the Pacific Railroad Company, predecessor of the Missouri Pacific. The Pacific Railroad Company was incorporated by the Legislature. [Laws 1849, p. 219.] Section 7 gave the company power to construct a railroad, and for that purpose the company was given power to "hold a strip of land, not exceeding one hundred feet wide, and may also hold sufficient land for the construction of depots, warehouses and water stations." Because of the statutory provision, it was held that the railroad company took a mere *easement* in the right of way land and not the *fee*.

Wabash Ry. Co. v. Chauvin et al., 346 Mo. 950, 144 S. W. (2d) 110, was an action to determine title to what we may term an *abandoned* railroad right of way. The North Missouri Railroad Company, predecessor of the Wabash, was incorporated by special act of the Legislature. [Laws 1851, p. 483.] In condemnation proceedings, the North Missouri Railroad Company obtained a judgment purporting to vest in it the *fee* title to the right of way in question. Section

7 of the Act of 1851, as to the power of the railroad company to take and hold land, was the same as Section 7 of the Act of 1849, incorporating the Pacific Railroad Company. It was held that notwithstanding the condemnation judgment purporting to vest a fee in the railroad company, it took only an *easement* which *expired*, so to speak, when railroad operations over the right of way ceased.

In the present case, as stated, supra, Section 1187, R. S. 1899, provided that a street railway company had the power "to acquire by grant a right of way not to exceed fifty feet in width in private property." It will be noted that the statute did *not* give such railroad power to acquire by grant or otherwise the *fee* in the right of way land. "A right of way, in its legal and generally accepted meaning in reference to a railroad company's interest in land is a mere easement for railroad purposes in the lands of others." [51 C. J., sec. 203, p. 539; State ex rel. State Highway Commission v. Griffith et al., 342 Mo. 229, 114 S. W. (2d) 976, l. c. 978.]

Plaintiff argues that the various street railway companies, which have held the land here involved, have, at all times, regarded their respective interest therein as no more than an *easement*. This argument is based on the statement, in the Branneky deed of March 5, 1911, that the land described was the same *right of way*, etc., and the right of way references in the following documents mentioned, supra: (1) The Colonial Trust Company deed of trust; (2) the trustee's deed made upon foreclosure of that deed of trust; (3) the McCulloch quitclaim of July 11, 1908; and (4) the order of the United States District Court to the trustee in bankruptcy to execute a quitclaim to the State of Missouri.

Independent of these documents, we are of the opinion that the statute, Section 1187, R. S. 1899, limited the interest conveyed by the Luecke and Branneky deeds to an *easement*, and we so rule. And it must follow and does, that when the St. Louis Public Service Company, in 1932, abandoned use of tracts 1 and 2, for railroad purposes, the easement of the railroad company therein expired or became extinguished, and all rights in these tracts reverted, respectively, to the Lueckes and the Brannekys, unless defendant acquired an easement by prescription.

Did defendant acquire an easement by prescription? Since the railroad company had only an easement interest in the land it had no right to grant an additional easement burden for the transmission line beyond the period of use by the railroad for right of way purposes. [St. Louis, I. M. & S. Ry. Co. v. Cape Girardeau Bell Telephone Co. et al., 134 Mo. App. 406, 114 S. W. 586; 10 R. C. L., p. 119, sec. 105; 22 R. C. L., p. 867, sec. 115; 18 Am. Jur., p. 840, secs. 209, 210; note—94 A. L. R. 523.] Defendant, in effect, agrees that such is the law, but contends that it has "held adversely to reversioners (the Lueckes, the Brannekys and their grantees) since 1916." But has defendant held *adversely* since 1916? We think not.

May 23, 1913, defendant made application to the railroad company for *permission* to place its transmission line on the right of way, and on June 21, 1913, the railroad company wrote a letter to defendant stating that "this permission is granted under the following conditions." Then follow the conditions, among which were that the transmission line was to be placed on the north side of the right of way; that if the railroad company should want the line, poles, and wires relocated, defendant would do so at its own expense; and that the railroad company could use the transmission line poles for some of its own purposes.

August 5, 1930, the railroad company and defendant entered into, what may be termed, a supplemental agreement respecting the transmission line. The supplemental agreement refers to the letter of June 21, 1913, and says that at that time defendant was granted "the right and privilege" to erect, on the right of way, the transmission line, and goes on to say that defendant had discontinued the use of a part of the transmission line, and that the railroad company desired to use the abandoned poles, etc., and was given the right to do so. Defendant was to move its transmission lines from the right of way when notified by the railroad company to do so.

In January, 1931, the railroad company and defendant entered into an entirely new contract respecting the transmission line. This contract set out in full the *permission* letter of June 21, 1913, then recites that "the needs and desires of the respective parties with respect to said transmission line and other matters in said agreement have changed, and new arrangements governing them are desired," and that "in consideration of the mutual covenants and agreements herein contained, it is agreed by the parties hereto as follows:" (1) The agreement of June 21, 1913, was to be of no further effect, and full satisfaction of all its terms was acknowledged by both parties; (2) defendant was to move its attachments from certain poles in the transmission line, but the poles were to be the property of the railroad company; (3) the railroad company *granted* to defendant, without price, an *easement* to maintain the transmission line on the right of way; (4) defendant gave the railroad company space on its transmission line poles for certain wires, appliances, etc., but each party was to maintain its own attachments; (5) in the event relocation of the poles in the transmission line became necessary "in the use of said right of way for railroad purposes," then defendant, at its own expense, was to relocate "said poles on said right of way," and each party was to move its own attachments to the poles in their new location; (6) if defendant abandoned the transmission line, the poles became the property of the railroad company; and (7) it was provided that "this agreement and easement hereby conveyed shall inure to and be binding upon the successors and assigns of the parties hereto."

It is quite clear, we think, that from 1916 to January 18, 1932,

when the right of way land here involved was abandoned by the railroad company, defendant's occupancy, at most, was only *permissive* and not *adverse*, and such character of occupancy, however long, will not ripen into a prescriptive easement. [Faulkner v. Hook et al., 300 Mo. 135, 254 S. W. 48; Pitzman v. Boyce et al., 111 Mo. 387, 19 S. W. 1104; Anthony et al. v. Kennard Bldg. Co., 188 Mo. 704, 87 S. W. 921; Auxier v. Horn (Mo.), 213 S. W. 100, l. c. 104; Seested v. Applegate et al. (Mo. App.), 26 S. W. (2d) 796, l. c. 799; Hurt v. Adams, 86 Mo. App. 73; Nelson v. Nelson, 41 Mo. App. 130.]

Defendant, however, contends that when "one, who may exercise the power of eminent domain, rightfully constructs an improvement (on land) designed for service of the public, he has the right to continued the occupancy of the land even after his right to do so has expired, and the only remedy available to the landowner is to sue for the amount to which he would have been entitled had the land originally been taken by the condemnation. This chose in action does not run with the land, and, consequently, is barred by the five-year Statute of Limitations," Section 862, R. S. 1929, 2 Ann. Stat., p. 1143. Plaintiff contends that the five-year statute is not applicable. The case of Doyle et al. v. Kansas City & S. Ry. Co., 113 Mo. 280, 20 S. W. 970, was an action for damages for the appropriation of land for right of way. In that case the court said (113 Mo. l. c. 287, 20 S. W. 970):

"Now it is obvious that . . . if the plaintiffs had chosen to resort to ejectment, nothing short of the time specified in the ten-years statute would have barred them from recovering the land. But they had it at their option, within the time they might have sued for the land itself, to sue for the value of that land and incidental damages, by reason of its having been taken and the method of such taking; consequently, the five-years bar which may be appropriately invoked in simple actions of trespass does not apply and cannot apply to a case of this sort, where the result of the judgment and its satisfaction will be to vest the title in the defendant company as effectually as if resultant from regular proceedings for condemnation."

DeGeofroy et al. v. Merchants Bridge Terminal Ry. Co., 179 Mo. 698, 79 S. W. 386, 64 L. R. A. 959, 101 Am. St. Rep. 524, was an action by abutting property owners for consequential damages resulting to their property from the construction of an elevated railroad in the street in front of their property. It was held that the five-year Statute of Limitations applied. [See also Riggs v. Springfield, 344 Mo. 420, 126 S. W. (2d) 1144, l. c. 1153, and cases there cited.]

The distinction between the present case and the Doyle case, supra, on the one hand, and the DeGeofroy and Riggs cases on the other hand, is that in the former, the running of the statute for 10 years will result in *taking* the land, while in the latter, there is no land *to take*—there being nothing involved except consequential damages *to* land.

Defendant calls our attention to Missouri Power & Light Co. v. Thomas et ux., 340 Mo. 1022, 102 S. W. (2d) 564. A question of limitations was not involved in that case.

The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.