STATE of Missouri, ex rel., MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff/Appellant,

v.

John C. MUSTERMAN, et al., Exceptions of Lawrence O. Schob, et al., Defendants/Respondents.

No. 62076.

Missouri Court of Appeals, Eastern District, Division One.

June 29, 1993.

---

1. Dalton's motion to dismiss and for damages for frivolous appeal is denied.

Paul R. Sterrett, Rich Tiemeyer, Paul R. Ferber, Kirkwood, for plaintiff/appellant.

Frank A. Conard, St. Charles, for defendants/respondents.

AHRENS, Presiding Judge.

Plaintiff, Missouri Highway and Transportation Commission (Commission), appeals from a jury verdict and resulting judgment of $300,000.00 in favor of defendants, Lawrence and Carol Schob (landowners), on a trial of exceptions to the commissioners' award in this condemnation action. We reverse and remand.

The property that is the subject of this condemnation action was a parcel of land along Missouri Bottom Road in St. Louis County, Missouri. The Commission was constructing an access road to the new 115 Bridge, and took landowners' three-acre parcel of property for the project. Landowners utilized the property as a residence and as a business; landowners lived on the land and also boarded horses and operated a riding stable on the property. The landowners had three buildings on the property, a one and one-half story frame home, and two barns in which the horses were boarded. Construction of the access road required a total taking of the property.

At trial, landowners presented evidence of the fair market value of the property and as to the separate value of the riding stable business. Lawrence Schob, one of the owners of the property, testified regarding the value of the business and the property. He testified that, in his opinion, the fair market value of the land and three buildings totalled $320,000.00. Schob further testified that he believed the value of the land, buildings, and business together was $475,000.00.

Landowners also presented expert testimony of the value of the land and the business. Alireza Nasseh, an associate professor of finance, testified as to the value of the business. Over objection, Nasseh valued the business only, based on a capitalization of the net operating cash flow of the business from the years 1986, 1987, and 1988. Using a capitalization rate of fifteen percent, Nasseh concluded that the value of the business, exclusive of any of the buildings or real estate located on the property, was $200,757.00. Nasseh did not testify regarding the fair market value of the property; rather, he used the capitalization of the net operating cash flow solely as a means of valuing the business. Nasseh gave no opinion as to the fair market value of the land taken by the Commission.

Terry Lee Ross, a real estate appraiser, testified on behalf of landowners regarding the fair market value of the property. To determine the value of the property, he used two methods of valuation. Ross used a market analysis to value all of the property, except for the barns; Ross was not able to use a market analysis for the barns, and utilized the cost approach to value them. He testified that in his opinion the value of the land and buildings was $400,000.00. Ross did not include any value for the business, or utilize any capitalization of income from the business to arrive at his opinion of the fair market value of the property.

Thomas Garnett, a real estate appraiser, testified on behalf of the Commission. He used the cost less depreciation method to determine the fair market value of the property. Utilizing this method, Garnett testified that, in his opinion, the fair market value of landowners' property at the time of the taking was $175,000.00. Garnett did not use a capitalization of the business profits or cash flow of the business to arrive at his value of the property.

The Commission's sole point on appeal is that the trial court erred in allowing testimony of the value of the separate loss for the business, distinct from the damages sustained by taking the property itself. The Commission argues that the value of a business located on property, separate and apart from the value of the land and the buildings contained thereon, is inadmissible to establish the fair market value of property taken in condemnation cases. Landowners contend that evidence of capitalization of income is admissible to determine the fair market value of property, and

therefore should also be used to value a business located on property, separate from the value of the land, when the business is inextricably related to the land.

 It is the general rule in Missouri condemnation cases that business profits are inadmissible evidence of the value of land on which a business is located. *City of St. Louis v. Union Quarry & Construction Co.*, 394 S.W.2d 300, 306 (Mo.1965). The basis for exclusion of such evidence is that evidence of profits derived from a business conducted on property is too speculative and remote to be considered as a basis for ascertaining the market value of property. *Id.* An exception exists when there is a total taking of the property and the business is inextricably related and connected with the land so that an appropriation of the land constitutes an appropriation of the business. *Land Clearance for Redevelopment Authority of Kansas City v. W.F. Coen & Co.*, 773 S.W.2d 465, 468 (Mo.App.1989). In such instances, evidence of net profits of the business may be allowed to prove the value of the land taken. *Id.*

 Until recently, evidence of capitalization of business income was admissible only when there were no comparable sales of property available to use to place a value on the land. *Id.* The capitalization of business income, however, is now admissible to determine the fair market value of property even when comparable sales are available. *See Land Clearance Redevelopment Authority v. Kansas Univ. & Endowment Ass'n*, 797 S.W.2d 495, 502 (Mo. App.1990). Landowners argue that *Kansas Univ. & Endowment Ass'n* indicates that evidence of future profitability of a business is directly related to a jury's determination of the fair market value of the property and is therefore admissible. The Commission claims that the case does not hold that evidence of business profits is admissible to determine the separate value of a business located on property, and that evidence of the value of a business, added to the value of the land, remains inadmissible.

In *Kansas Univ. & Endowment Ass'n,* the court held that a capitalization of business income may be used to determine the fair market value of the land. The court did not state that expert witnesses may testify as to the value of a business, separate and distinct from the value of the land and the structures on it. *Id.* In none of the cases cited by landowners did the court permit testimony as to the value of the business itself, to be added to the value of the land, in order to ascertain the fair market of property. Evidence of business profits was used only to determine the fair market value of the land. *See, e.g., Union Quarry & Construction Co.*, 394 S.W.2d 300; *Del–Mar Redevelopment Corp. v. Associated Garages, Inc.*, 726 S.W.2d 866 (Mo.App.1987); *Board of Pub. Bldgs. v. GMT Corp.*, 580 S.W.2d 519 (Mo.App.1979).

One case which did address whether expert testimony of the value of a business may be added to the value of the land to determine fair market value, *State ex rel. State Highway Comm'n v. Offutt*, 488 S.W.2d 656, 661 (Mo.1972), found that such evidence is not admissible. In *Offutt*, the property owners introduced evidence of the value of a gasoline station business, and added the value of the business to the value of the land and its structures to calculate the fair market value of property taken. Although the *Offutt* court did not discuss whether the business was considered inextricably related to the land, the Supreme Court found that such evidence was incompetent and should not have been allowed. *Id.* at 659–62.

 Whether the business was inextricably related to the land is not determinative of whether evidence of the value of the business, separate and apart from the fair market value of the land, was admissible. We find that testimony of the separate value of a business, added to the value of the land, is not admissible in condemnation cases.

Here, landowners had two experts testify as to damages; Nasseh testified solely as to the value of the business, and Ross testified only as to the value of the land and the buildings on it. Landowners did

not use the capitalization of cash flow from the business to determine the fair market value of the property; it was used to place a value on the business, apart from the value of the land. Landowners did not tie in the profits of the business to the value of the land. Nasseh valued the business at $200,757.00, and Ross valued the land and buildings on the land at $400,000.00. The evidence presented to the jury, therefore, was that landowners sustained total damages as a result of the taking of approximately $600,000.00. No witness testified, however, that the fair market value of the property was $600,000.00. We cannot say that the jury did not consider this testimony in determining landowners' damages.

The judgment is reversed and the cause remanded for new trial.

REINHARD and CRIST, JJ., concur.