**In the Matter of RIVERSIDE–QUINDA-RO BEND LEVEE DISTRICT, PLATTE COUNTY, MISSOURI, Respondent,**

v.

**MISSOURI AMERICAN WATER COMPANY, Appellant.**

No. WD 61718.

Missouri Court of Appeals, Western District.

June 3, 2003.

Motion for Transfer to Supreme Court Denied July 29, 2003.

Application for Transfer Denied Oct. 28, 2003.

R. Dan Boulware, St. Joseph, MO, Ronald L. Holt, Todd Henry Bartels, Kansas City, MO, for appellant.

John W. McClelland, Kansas City, MO, R. Michael McGinness, Platte City, MO, for respondent.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH.

ROBERT ULRICH, Judge.

Missouri American Water Company ("Water Company") appeals the judgment of the Circuit Court favoring Riverside–Quindaro Bend Levee District ("Levee District") in its condemnation of property that certain entities had authorized the Water Company to utilize and on which the Water Company had placed water distribution lines.[1] Water Company raises

---

1. The entities authorizing the Water Company to utilize their property for placement of wa- ter distribution lines include City of Riverside ("Riverside"), Burlington Northern Santa Fe

six points on appeal. It claims that the Circuit Court erred in finding that: (1) Water Company failed to introduce any evidence establishing that it has a legal right to locate and maintain its water distribution lines in Riverside because no substantial evidence supported this finding and it was against the weight of the evidence; (2) its Highway 9 License and Riverside Licenses are common law licenses not compensable in condemnation because Missouri's public right-of-way utility statutes establish special licenses occupancy interests for utilities that cannot be modified or terminated without compensation unless relocation is mandated by roadway improvement and maintenance needs; (3) Water Company's Railroad License is a license and not compensable because the finding was against the weight of the evidence and erroneous under the law; (4) Water Company will not be required to move its line outside of the ten-foot wide area of the Private Easement and that such finding is against the weight of the evidence; (5) a compensable taking of an easement interest does not occur if the holder of that interest is not required to completely leave the easement area and instead is required to relocate facilities from one area within the easement to another area, because a taking of a compensable interest occurs whenever the holder is required to surrender any part of its occupancy rights under the easement; and (6) a utility's costs for relocation of its facilities are not compensable in condemnation because a utility is not required to shoulder such costs for relocation from a public right-of-way unless the relocation is necessitated by roadway needs, it is not required to bear such costs for relocation from a private license unless the licensor has demanded the relocation, for reasons

Railroad ("BNSF"), the Missouri State Highway Commission ("Highway Commission"),

precluding condemnation, and it is not required to bear such costs for relocation from or within a private easement because relocation essentially destroys an existing occupancy which has a value at least commensurate to the relocation costs. The judgment of the trial court is affirmed in part and reversed in part.

## Factual and Procedural Background

This appeal originates from condemnation proceedings brought by Levee District. Levee District, the United States Army Corps of Engineers ("Corps"), and Riverside are working together to build a levee and flood control project in Platte and Clay Counties which will protect roughly 2,400 acres of land from flooding. Levee District was created in 1918 and operates by authority of Chapter 245 of the Revised Missouri Statutes. Water Company is a privately held Missouri utility company that is regulated by the Missouri Public Service Commission pursuant to Chapter 386. Water Company operates nine systems in Missouri, one of which is located in Platte County and contains over 4,800 end users.

In March 1999, Levee District prepared and submitted to its board of supervisors a "Report of Engineer and Supplement to Plan for Reclamation." The plan was designed to protect transportation facilities located within Levee District, namely the railroad lines of BNSF, Missouri State Highways 9, 69, and 169, and Interstate Highways 635 and 29. To protect the transportation facilities, the plan required Levee District to acquire certain property to provide a permanent right-of-way for construction of the levee as well as relocation of certain utilities. After approving

and Line Creek Properties.

the plan, the board authorized Levee District to file a petition as provided by section 245.110. Levee District filed the petition on April 21, 1999, in the Circuit Court of Platte County ("Circuit Court") seeking approval to amend the district boundaries, to acquire additional properties including easements and rights-of-way, and to appoint commissioners to value the property interests to be taken and assess benefits and damages. The Circuit Court approved the plan on July 13, 1999.

A new plan was issued and presented on April 17, 2000, to Levee District's board. The board approved the amended plan and filed an amended petition with the Circuit Court on April 26, 2000. The amended plan identified those parties holding rights-of-way and easements over tracts of land that Levee District was condemning. The Circuit Court subsequently approved the amended plan. Throughout 2000 and 2001, the commissioners conducted hearings with fee title owners in property subject to acquisition under the plan.

Water Company was one of the property owners identified in the amended plan as holding property interests to be condemned by Levee District. Construction of the new levee requires Water Company to relocate distribution lines in seven locations: (1) one is located within a private easement granted to Water Company by Line Creek Properties ("Private Easement"); (2) another is a railroad license granted to Water Company by BNSF and located within a right-of-way owned by BNSF ("Railroad License"); (3) one area is a public right-of-way license granted to Water Company via a 1967 permit from the Highway Commission and located within a Missouri Highway and Transportation Commission right-of-way ("Highway 9 License"); and (4) the other four areas were granted to Water Company by Riverside and are located within rights-of-way

on Riverside streets ("Riverside Licenses"). Water Company's distribution lines have been installed in these seven locations between ten to forty years.

Between 1999 and 2000, Water Company and Levee District had several discussions about the relocation of Water Company's lines. On January 28, 2000, Mike McGinness, a Levee District attorney, sent a letter to Mark Griffin, Water Company's engineering manager. The parties dispute the purpose of the letter. Water Company claims that the purpose of the letter was to assure Water Company that Levee District would pay all of Water Company's costs of relocating water lines necessitated by the construction of the new levee. Levee District contends that the letter was intended to inform Water Company that it might be eligible to receive reimbursement for relocating its water lines through the Uniform Relocation Assistance and Real Properties Acquisition Policies Act of 1970, 42 U.S.C.A. § 4601 et seq. ("Federal Relocation Act"). Levee District further claims that the letter recited its intent to comply with the Federal Relocation Act.

Levee District commissioners issued their report, fixing values for property interests taken, and assessing the damages and benefits accrued to landowners on September 13, 2001. The commissioners found that Water Company was not entitled to damages and that its property interests were not compensable interests in the condemnation proceeding. Water Company filed exceptions to the report on September 21, 2002, objecting to the taking of its property interests without compensation and requesting a jury trial on the damages it would incur as a result of the taking. On October 23, 2001, the Circuit Court entered an order confirming the commissioners' report. Water Company filed a motion for clarification of the Circuit Court's October 23, 2001 order. Spe-

cifically, Water Company sought to determine whether it would be receiving a jury trial on its exceptions to the commissioners' report. The Circuit Court held an evidentiary hearing on Water Company's exceptions to the commissioners' report on April 25, 2002.

The Circuit Court issued its holding on June 12, 2002, concluding that Water Company had no compensable interest in any of the seven locations and would not be compensated for any of its relocation costs. This holding did not constitute a final judgment because other property owners' exception claims were yet undecided. Water Company sought a 74.01(b) determination on June 21, 2002. On July 25, 2002, the Circuit Court ruled under Rule 74.01(b) that no just reason existed for delay of Water Company's appeal and issued a final judgment regarding its claims. This appeal followed.

## Standard of Review

■■■ The standard of review in a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* In applying this standard, the evidence and all reasonable inferences drawn therefrom is viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences must be disregarded. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App. W.D.2000) (citing *Lance v. Lance*, 979 S.W.2d 245, 248 (Mo.App. W.D.1998)).[2] A judgment should be set aside on the basis that it is against the weight of the evidence only with caution and a firm belief that the judgment is wrong. *Id.* at 536. " 'Weight of the evidence' refers to the evidence's weight in probative value or its effect in inducing belief, not its quantity." *Id.* (citation omitted).

■■■ A reviewing court's primary concern is the correctness of the trial court result, not the route taken to reach it. *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo. App. S.D.1990). Notwithstanding the fact that the trial court's judgment contains wrong or insufficient proffered reasons, if the correct result was reached, the appellate court must affirm. *City of Kansas City v. New York–Kansas Bldg. Assocs., L.P.*, 96 S.W.3d 846, 853 (Mo.App. W.D. 2002) (citing *Smith v. Estate of Harrison*, 829 S.W.2d 70, 73 (Mo.App. E.D.1992)).

## Point I

For its first point on appeal, Water Company claims that the Circuit Court

---

2. Levee District argued in it brief that the standard of review governing this case is the same as that used for a legislative action. It contends that the Circuit Court's judgment must be affirmed unless it was "arbitrary and unreasonable, meaning that the decision is not 'fairly debatable.' " Levee District claims that the Circuit Court exercised "legislative" power in creating the Levee District and confirming the commissioner's report. Although the creation of a levee or drainage district is a "purely legislative function, . . . the appropriation of private property for such purpose and determining the damage therefor by jury trial, . . . are *distinctly judicial functions.*" *Birmingham Drainage Dist. v. Chicago, B. & Q.*

R. Co., 274 Mo. 140, 202 S.W. 404, 406–07 (1917) (emphasis added). At issue in this case is whether the Circuit Court erred in determining that Water Company's property interests were not compensable in a condemnation proceeding. As noted, this type of determination is a judicial function. Furthermore, the statute governing the creation and operation of levee districts, sections 245.010 to 245.280, RSMo 2000, does not mandate a higher standard of review than that generally used in a court-tried case. In the absence of statutory authority authorizing a more deferential standard of review, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), governs appellate review of this court-tried case.

erred in finding that Water Company failed to introduce any evidence establishing that it has a legal right to locate and maintain its water distribution lines in Riverside because no substantial evidence supported this finding and it was against the weight of evidence in that Water Company offered testimony of Riverside's custom of orally granting authority to utilities to install lines in its city rights-of-way, the applicable statutes and caselaw do not mandate written authorization, and there was no evidence that Riverside had not granted Water Company permission to install and maintain its water distribution lines in its city street rights-of-way. Water Company contends that it provided testimony from two witnesses establishing that the custom of Riverside was to obtain oral approval from the City Engineer before installing water lines in Riverside street rights-of-way. It further claims that neither the applicable statutes nor case law provide for written authorization to install water lines. Levee District counters that Water Company took the Circuit Court's finding out of context because it failed to read the sentence immediately following the finding, namely that the Circuit Court assumed that Water Company was authorized by Riverside to locate its lines in city street rights-of-way.

Paragraph nine of the Circuit Court's June 12, 2002, findings is the ruling on which Water Company bases its first point on appeal. The paragraph provides, in pertinent part:

> [Water Company] has failed to introduce any evidence indicating that it has a legal right to locate its lines at locations No. 3, 5, 6, and 7 (e.g. the Riverside Licenses), however, [Water Company] asserts that it holds a "license" in these areas. Assuming that [Water Company] was authorized by the City of Riverside, Missouri to place its lines in the right-of-

way, the interest of [Water Company] is a license.

For purposes of the ruling, the Circuit Court determined that Riverside had approved the installation and maintenance of Water Company's distribution lines. The unopposed evidence offered by Water Company established that Riverside's custom is to provide verbal authorization for utilities to install distribution lines. The Circuit Court accepted that premise and in the absence of a statutory mandate or precedent indicating that Riverside's approval had to be in writing, assumed verbal authorization was sufficient. Accordingly, the authority of Water Company to locate its distribution lines in the city street rights-of-way was not contested. This finding does not, however, negate the Circuit Court's judgment because the court did not render a ruling that Water Company did not have the authority to be present. By assuming that Water Company had authority to locate its lines in the Riverside rights-of-way, the Circuit Court impliedly characterized Riverside's actions as a de facto approval. Point one of Water Company's appeal is denied.

### Point II

Water Company claims in its second point on appeal that the Circuit Court erred as a matter of law in holding that its Highway 9 License and Riverside Licenses are common law licenses not compensable in condemnation because Missouri's public right-of-way utility statutes establish special license occupancy interests for utilities that cannot be modified or terminated without compensation unless relocation is mandated by roadway improvement and maintenance needs. Specifically, Water Company contends that it is entitled to compensation for its Highway 9 License and Riverside Licenses being condemned by Levee District because the Licenses are special types of licenses pursuant to sec-

tion 227.240, RSMo 2000, in that it cannot be compelled to relocate its water lines and facilities without being compensated unless it is necessitated by the public's need to use the road. Levee District contends that Water Company's occupancy rights in the Highway 9 and Riverside Licenses are that of a licensee.

In subpart one of its point two on appeal, Water Company cites sections 227.240.1, 229.350, and 229.360, RSMo 2000, as authority for its argument that it may not be compelled to relocate its water lines without compensation unless the relocation is necessitated by the Highway Commission's or city highway engineer's need to improve or maintain the roads.[3] Section 227.240.1 provides, in pertinent part, as follows:

> The location and removal of all ... pipelines ... erected or constructed ... by any corporation, association, or person, within the right-of-way of any state highway, insofar as the public travel and traffic is concerned, and insofar as the same may interfere with the construction or maintenance of any such highway, shall be under the control and supervision of the state highways and transportation commission.

Sections 229.350 and 229.360 pertain to cities and municipalities and contain similar language as section 227.240. Missouri courts have interpreted section 227.240 as proscribing the Highway Commission's ability to compel a utility to relocate its utility equipment by requiring the Highway Commission establish that the relocation be necessary to "prevent interference with traffic on the highways and with highway construction and maintenance." *State ex rel. State Highway Comm'n v. Weinstein*, 322 S.W.2d 778, 783 (Mo. banc 1959) (quoting *State ex rel. State Highway*

*Comm'n v. Union Elec. Co. of Mo.*, 142 S.W.2d 1099, 1101 (Mo.App.1940)). The Highway Commission cannot arbitrarily compel a utility to relocate its equipment. *Id.* at 784 (holding that "the [Highway] Commission could not arbitrarily require a pipe line to be moved from a location on one side of a right of way (where it did not interfere in any way with use, construction or maintenance of the highway) to a similar position on the other side of the right of way, because there would be no reasonable basis for such action"). Generally, the relocation costs associated with section 227.240.1 are borne by the utility. *Jackson County Pub. Water Supply Dist. No. 1 v. State Highway Comm'n*, 365 S.W.2d 553, 558 (Mo.1963) (noting that "the allocation of relocation costs, as a matter of policy, has been committed solely to the discretion of the Highway Commission" and "[t]he removal of [pipe lines] shall be made at the cost and expense of the owners"). Water Company argues that it should not be compelled to relocate its equipment due to the construction of a levee because the statute does not mandate relocation under such circumstances. Namely, that the relocation is being compelled for a reason other than it interferes with traffic or road construction/maintenance. *Weinstein*, 322 S.W.2d at 783. Because the relocation does not fit within the parameters of section 227.240.1, Water Company claims that it is entitled to compensation from Levee District.

While these statutes govern the relationships between Water Company and the Highway Commission and Water Company and the City of Riverside, they are inapplicable to the relationship at issue in this case, namely, the relationship between Levee District and Water Company.

---

**3.** The Highway 9 License is affected by section 227.240, RSMo 2000 while the Riverside Licenses are affected by sections 229.350 and 229.360.

Nothing in any of these statutes prohibits utility companies from having to relocate their equipment in a condemnation proceeding. Here, Levee District is condemning Water Company's interest in the Highway 9 License and Riverside Licenses. At issue is whether Water Company is entitled to compensation for the loss of its occupancy interests. Accordingly, general condemnation law applies to the facts of this case.

 "A license is a privilege to enter certain premises for a stated purpose and does not vest any title, interest or estate in the licensee." *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 385 (Mo.App. S.D.2001) (quoting *Hill v. Eads*, 970 S.W.2d 882, 883 (Mo.App. S.D.1998)). "No formal language is necessary to create a license as long as the proper intent appears...." *Id.* (quoting 53 C.J.S. *Licenses* § 89). A license may be revoked at the will of the licensor. *Annin v. Lake Montowese Dev. Co.*, 759 S.W.2d 240, 241 (Mo.App. E.D. 1988) (citing *Kansas City Area Transp. Auth. v. Ashley*, 485 S.W.2d 641, 644 (Mo. App. W.D.1972)). Water Company concedes that its Highway 9 License and Riverside Licenses are licenses. It attempts to argue that its occupancy interests are "special" or "favored" licenses. Precedent establishes, however, that "the effect of [the Highway Commission] authorizing a particular location is to give the [Water Company] what amounts to a license to use that location for its pipe line; and that to order a relocation is in effect the revocation or at least modification of that license." *Weinstein*, 322 S.W.2d at 783; *accord Franke v. Southwestern Bell Tel. Co.*, 479 S.W.2d 472, 476 (Mo.1972). "[A] license or permission to use a particular location on the right of way is a privilege and not a right, even under the provisions of section 227.240." *Weinstein*, 322 S.W.2d at 783.

 A licensee is not entitled to compensation in a condemnation proceeding. *State ex rel. State Highway Comm'n v. Johnson*, 592 S.W.2d 854, 857 (Mo.App. E.D.1979); *see also United States v. 126.24 Acres of Land*, 572 F.Supp. 832, 834 (D.C.Mo.1983) (noting that "the distinction between an easement and license is important in a condemnation case because a license does not constitute property for which the government is liable upon condemnation"). One in possession as a licensee does not have a right to compensation. *Millhouse v. Drainage Dist. No. 48 of Dunklin County*, 304 S.W.2d 54, 58 (Mo. App.1957). To be entitled to compensation in a condemnation proceeding, "[t]he interest held, the property for which compensation must be rendered ... must consist of some definite right of domination in and over the physical thing, such as the right of user, or exclusion, or disposition. A mere contractual relationship is not sufficient in itself." *Id.* A license creates, moreover, no title, interest, or estate in the licensee. *Kimack v. Adams*, 930 S.W.2d 505, 507 (Mo.App. E.D.1996) (citing *Annin*, 759 S.W.2d at 241). Because Water Company's occupancy interests in the Highway 9 License and the Riverside Licenses were mere licenses, it is not entitled to compensation in a condemnation proceeding. Subpart one of point two is denied.

 In the second subpart of point two, Water Company argues that the Circuit Court's determination that Water Company's license interests in its occupancy of public rights-of-way are not compensable is plainly inconsistent with the nature of the special license interest Missouri law provides to utilities. Water Company claims that the Legislature could not have intended to protect utilities and their rate payers from relocation costs unrelated to roadway maintenance and construction yet expose utilities to relocation costs incurred

because of other entities exercising their eminent domain powers. As noted above, sections 227.240, 229.350, and 229.360, govern the relationship between Water Company and the Highway Commission and Water Company and cities and municipalities. These statutes do not govern the relationship between Water Company and Levee District. In the absence of a statute providing that Levee District cannot compel Water Company to relocate its utility lines unless roadway improvements necessitated relocation, Levee District's eminent domain powers include authority to condemn Water Company's public rights-of-way licenses without compensation. § 245.095, RSMo 2000.

Water Company cites *Home Builders Association of Greater St. Louis v. St. Louis County Water Company*, 784 S.W.2d 287 (Mo.App. E.D.1989), to argue that only governmental entities in control of the public right-of way can compel it to relocate its water lines and then only for purposes of constructing or maintaining the roads. In *Home Builders*, private developers agreed to perform certain roadway improvements requiring relocation of utility lines. *Id.* at 288. These improvements were mandated by the government entities in charge of the roadway as a condition to its approval of the developers' project. *Id.* The private developers sought to compel the utilities to pay the relocation costs of moving utility lines necessitated by the roadway improvements. *See id.* The *Home Builders* court ruled that the utilities were not responsible for paying the relocation costs because the private developers' actions were not governmental in nature and not designed to achieve a governmental purpose. *Id.* at 291. The court's rationale was that the private developers were not public entities exercising police power. *Id.*

The present case is distinguishable from *Home Builders* because it involves a quasi-governmental entity condemning Water Company's licenses. Levee District is not solely creating the new levee for private sector purposes. Rather, the new levee will benefit the public and protect the roadways from potential flooding. Levee District has, moreover, the authority to condemn property to construct a levee. § 245.095, RSMo 2000. Because Water Company's occupancy interests in the Highway 9 and the Riverside rights-of-way are licenses, it is not entitled to compensation. This portion of Water Company's point two on appeal is denied.

In the third subpart of point two of its appeal, Water Company claims that the Circuit Court erred in ruling that a utility's license interest in a public right-of-way may be condemned by Levee District without compensation because such a ruling effectively authorizes other public, quasi-public, and private entities possessing eminent domain power to shift capital costs intended to benefit those served by the condemning entity to relocating utilities and their rate payers. Water Company contends that entities possessing eminent domain powers such as drainage districts, sewer districts, fire protection districts, and junior college districts should not be allowed to compel other utilities to relocate their equipment without compensation because it is inequitable to require the relocating utility and its rate payers to pay for a relocation that benefits the condemning entity and its constituents. Levee District counters that Water Company's equipment constitutes personal property and as such, is not entitled to compensation in a condemnation proceeding. It further claims that a utility is not entitled to compensation when required to move its lines within the same right-of-way.

Water Company cites *County of Contra Costa v. Central Contra Costa Sanitary District*, 182 Cal.App.2d 176, 5 Cal.Rptr. 783, 786 (1960), and *Northeast Sacramento County Sanitation District v. Northridge Park County Water District of Sacramento County*, 247 Cal.App.2d 317, 55 Cal. Rptr. 494, 499 (1966), for the proposition that it cannot be compelled to relocate its lines at its own costs in the absence of traffic needs or roadway improvements. These cases are inapposite to the present case because the holdings in both cases were based on California statutes governing public utilities. *Contra Costa*, 5 Cal. Rptr. at 785–86; *Northeast Sacramento County Sanitation Dist.*, 55 Cal.Rptr. at 498. Significantly, the *Contra Costa* court made a distinction between privately owned public utilities and public corporations. *Contra Costa*, 5 Cal.Rptr. at 785–86. The court noted that "where there is a relocation of a highway or *flood control structures* which necessitates a relocation of public utilities facilities, the cost of such relocation must be borne by the latter . . . . A privately owned public utility . . . derives its right to streets under franchises which require it to move its facilities whenever required by the authorities at its own expense." *Id.* (emphasis added). Unlike the sanitary district in *Contra Costa*, Water Company in this case is not a public corporation but, rather, a privately owned public utility. Under the rationale of *Contra Costa*, Water Company would not be entitled to compensation from Levee District.

 Like the flood control district in the *Contra Costa* case, Levee District is a creature of statute and exercises the authority granted to it by the legislature. The Legislature has granted Levee District the authority to condemn property for the creation of a new levee. § 245.095, RSMo 2000. The statute contains no pro-

vision for elevating Water Company's occupancy interests from a license to something more. In the absence of legislative precedent creating a "special" or "favored" license interest for Water Company, it is not entitled to compensation from Levee District. "In construing a statute, a principle generally followed is that common law rules are not changed except by the express terms of a statute or by necessary implication." *Bank of Urbana v. Wright*, 880 S.W.2d 921, 924 (Mo.App. S.D.1994) (quoting *N.E. & R. P'ship v. Stone*, 745 S.W.2d 266, 267–68 (Mo.App. S.D.1988)). Here, because the statute has not elevated Water Company's occupancy interest to something more than a license, general condemnation law applies to Water Company's Highway 9 and Riverside License interests. Under condemnation law, a license interest is not entitled to compensation. *Millhouse*, 304 S.W.2d at 58.

Levee District contends that Water Company's lines are personal property and as such, Water Company is not entitled to compensation for their removal. Water Company contends that no case law supports this proposition. Because Water Company's interests are licenses, this argument need not be addressed. Licenses are not entitled to compensation in a condemnation proceeding. *Id.*

 Water Company claims that the fact that the statute authorizing Levee District to condemn property lacks an articulated provision for compensation for relocation costs is not expressive of a legislative intent that compensation not be provided. It contends that the absence of such a provision indicates that the legislature intended for levee districts to bear the same compensation obligations that governmental authorities bear when requiring relocations not necessitated by roadway needs. The function of an appellate court does not include second guessing

the Legislature's intent. "In construing a statute, a principle generally followed is that common law rules are not changed except by the express terms of statute or necessary implication." *N.E. & R. P'ship*, 745 S.W.2d at 267–68 (citation omitted). In the absence of an express provision requiring Levee District to compensate Water Company's license interest, general condemnation law applies and provides that a license interest is not entitled to compensation in a condemnation proceeding. *Millhouse*, 304 S.W.2d at 58.

Levee District cites *Union Electric Company v. Land Clearance for Redevelopment Authority*, 555 S.W.2d 29, 32 (Mo. banc 1977), for the proposition that utilities must relocate their equipment in public rights-of-way at their own expense when the changes are required for a public purpose. In *Union Electric* the court held that an urban renewal project was a proper public purpose. Levee District contends that the construction of the new levee is designed to benefit the public and as such constitutes a proper public purpose requiring Water Company to relocate its water lines at its own expense. A key difference between this case and the *Union Electric* case is that in *Union Electric* the statute governing the urban renewal project declared it to be for a public purpose. Although the construction of the new levee will benefit the public, the legislature has not declared its creation to be a public purpose. The absence of such a legislative declaration renders the *Union Electric* case inapplicable to this case

*Union Electric* does not govern the outcome of this case. Rather, as discussed above, although sections 227.240, 229.350, and 229.360 govern the relationship between Water Company and the Highway Commission and Water Company and cities/municipalities, these statutes do not govern the relationship between Water Company and Levee District. Point two is denied.

## Point III

In its third point on appeal, Water Company claims that the Circuit Court erred in finding that Water Company's Railroad License is a license and not compensable because the finding was against the weight of the evidence and erroneous under the law in that the uncontradicted evidence established that the agreement creating the license grants the railroad a right to terminate Water Company's license if it interferes with railroad operations and the railroad has not exercised that right in thirty-seven years, and Water Company could condemn an easement to keep its Railroad License in the absence of the license interfering with railroad operations. Water Company argues that the railroad's failure to exercise its termination rights elevates its property interest to something more than a license. Levee District counters that Water Company's interest is only a license because the written agreement between Water Company and BNSF (railroad) refers to Water Company as a "licensee" and grants a license to Water Company. It claims that the railroad's failure to exercise the termination clause has no effect on Water Company's license other than to allow it to continue to exist.

▉ BNSF and Water Company entered into an agreement titled "Agreement for Pipe Line Across or Along Right of Way" on November 17, 1965. The agreement refers to Water Company as a "licensee" and grants Water Company a "license" to construct and maintain a water main. Nothing in the agreement indicates that Water Company's interest will increase to something more than a license if BNSF fails to exercise the termination clause or fails to exercise it after a certain

number of years. Water Company emphasizes the railroad's failure to exercise its termination rights for *thirty-seven years.* (Emphasis added). Water Company seems to imply that its Railroad License has been transformed into a prescriptive easement. Missouri precedent has rejected, however, the notion that a lesser right of occupancy can be transformed into a prescriptive easement. *See State ex rel. State Highway Comm'n v. Union Elec. Co. of Mo.,* 347 Mo. 690, 148 S.W.2d 503, 507 (1941) (holding that "when the right of way land here involved was abandoned by the railroad company, defendant's occupancy, at most, was only permissive, and not adverse and such character of occupancy, however long, will not ripen into a prescriptive easement"). Water Company concedes, moreover, that the agreement characterizes the property interest granted to it by the railroad as a "license."

 Water Company contends that the reason for its having to relocate its water lines is not due to the railroad's exercise of its termination rights but is because of Levee District's condemnation of the railroad's right-of-way easement and Water Company's interest in that location. It claims that "but for" Levee District's condemnation, it would continue to occupy the Railroad License area. It claims that it has a compensable interest in the Railroad License because the railroad may not terminate the license without sixty (60) days written notice, and in the absence of the railroad exercising its termination rights at some future period, Water Company would be able to exercise its condemnation rights pursuant to sections 393.020 and 393.030 as long as its water lines did not interfere with the railroad's operations. Water Company claims that it has something more than a license interest in the railroad right-of-way because its rights cannot be terminated by the railroad at

will or under any circumstance. This argument is unavailing because the parties agreed that the railroad would provide notice prior to revoking Water Company's license. The fact that the railroad has to give sixty days written notice prior to revoking Water Company's license does not negate the railroad's right to terminate Water Company's license at will. As a rule, a license may be revoked at the will of the licensor. *Annin,* 759 S.W.2d at 241 (citing *Kansas City Area Transp. Auth. v. Ashley,* 485 S.W.2d 641, 644 (Mo.App. W.D.1972)).

 As to Water Company's argument that it could exercise its condemnation powers under sections 393.020 and 393.030, it has not done so. These claims assume hypothetical facts that are not part of this case. Appellate courts lack jurisdiction to issue advisory opinions on matters of law that are not part of a live case or controversy. *Olson v. Olson,* 91 S.W.3d 164, 166 (Mo.App. W.D.2002). Under the circumstances, any analysis or opinion on this issue would only be based on speculation and would be entirely advisory in nature. Appellate courts do not decide nonexistent issues. *Meco Sys., Inc. v. Dancing Bear Entm't, Inc.,* 42 S.W.3d 794, 809 (Mo.App. S.D.2001). Point three is denied.

### Point IV

For its fourth point on appeal, the Water Company claims that the Circuit Court's finding that it will not be required to move its line outside of the ten-foot wide area of the Private Easement is against the weight of the evidence because the engineering evidence established that the only practical way to excavate existing water lines and construct new lines up and over the new levee without interruption of service is to place new connection lines outside of the easement area. Water Company contends that the only evidence

supporting this finding is the testimony of Dale Schmidtberger, the Levee District's project engineer, which it claims lacks probative value and is economically unfeasible. Levee District contends that there was insufficient evidence to establish that Water Company's line would have to be moved outside of the Private Easement area. It counters that the Circuit Court is granted broad discretion in making evidentiary determinations and in the absence of an abuse of discretion, this ruling must stand.

Paragraph fourteen of the Circuit Court's judgment addresses relocation of Water Company's Private Easement and provides:

14. The rights-of-way and easements condemned by the Levee District for construction of the levee improvements in this case do not eliminate underlying property interests, such as the easement held by [Water Company] unless the use of the property by the interest holders is inconsistent with rights acquired by the Levee District. At [the Private Easement location], [Water Company] will be required to remove its line from under the levee and may relocate the line up and over the levee embankment but will not lose its easement. [Water Company] has failed to demonstrate that it will be required to move its line outside of its existing easement.

Water Company asserts that this holding applies not only to its Private Easement but also to the Riverside Licenses, the Highway 9 License, and its Railroad License. The Circuit Court's finding in paragraph fourteen does not, however, expressly state that it applies to the other licenses. In the absence of express language applying this holding to the other licenses, the fourteenth paragraph of the Circuit Court's holding applies only to Water Company's Private Easement. For that reason, the only portion of Water Company's fourth point that will be addressed is whether the Circuit Court erred in finding that Water Company would not be required to relocate its line outside of the Private Easement area.

At trial, conflicting testimony regarding this issue was presented. Mr. Schmidtberger, project engineer for the Levee District, testified that he believed that Water Company's water line could be relocated within its existing occupancy or within Levee District's right-of-way. Frank Kartmann ("Mr. Kartmann"), vice president of operations for Water Company, testified that his opinion was that Water Company would have to relocate its line outside of the Private Easement area because the distance between the location of the existing line and the leading edge of the levee was sixty feet or more. He further testified that attempting to maintain the water line in the existing Private Easement area would not be economically feasible. Water Company claims that Mr. Schmidtberger's testimony lacks probative value because he testified that he had not looked into the matter in great detail.[4] Probative value is defined as "tends to prove an issue." BLACK'S LAW DICTIONARY 1203 (6th Ed.1990).

Water Company appears to contend that Mr. Kartmann's testimony is more credible than Mr. Schmidtberger's. In a court-tried case, the credibility of witnesses is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness. *SD Invs.*,

---

4. Both witnesses testified that specific details regarding relocation will have to be worked out with the project contractor as the levee is constructed.

*Inc. v. Michael–Paul, L.L.C.*, 90 S.W.3d 75, 85 (Mo.App. W.D.2002) (citing *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988)). An appellate court will not substitute its judgment for that of the trial court judge's on credibility issues. *Miller v. Secura Ins. & Mut. Co. of Wis.*, 53 S.W.3d 152, 159 (Mo.App. W.D.2001) (citing *Superior Gearbox Co. v. Edwards*, 869 S.W.2d 239, 244 (Mo.App. S.D.1993)). Great deference is given to a trial court on "factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *SD Invs.*, 90 S.W.3d at 85 (quoting *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984)). An appellate court defers, moreover, to the trial court when there is conflicting evidence, even if there is evidence which would support a different conclusion. *Kell v. Kell*, 53 S.W.3d 203, 205 (Mo.App. E.D.2001) (citing *Green v. Green*, 26 S.W.3d 325, 327 (Mo.App. E.D.2000)). The Circuit Court was not required to believe Mr. Kartmann's testimony. It was free to accept or reject all, part, or none of either Mr. Kartmann's or Mr. Schmidtberger's testimony. *McAllister v. McAllister*, 101 S.W.3d 287, 291 (Mo.App. E.D.2003) (citing *McGowan v. McGowan*, 43 S.W.3d 857, 861 (Mo.App. E.D.2001)). The Circuit Court chose to believe Mr. Schmidtberger's testimony.

 The Circuit Court's ruling that Water Company has failed to establish that it will have to relocate its Private Easement line is not against the weight of the evidence. The record established that it is possible for Water Company to relocate its line within the Private Easement area. That the cost of relocating the line may not be as economically feasible as Water Company wishes is not a factor.

"[T]he weight of the evidence is a matter of discretion." *Cole v. Plummer*, 661 S.W.2d 828, 831 (Mo.App. W.D.1983) (quoting *Taylor v. F.W. Woolworth Co.*, 641 S.W.2d 108, 111 (Mo. banc 1982)). The Circuit Court did not abuse its discretion in finding that Water Company did not establish that it would have to relocate its line out of the Private Easement area. Accordingly, the Circuit Court's finding is not against the weight of the evidence. Because Water Company failed to establish that relocating its line outside of the Private Easement area would be necessary, the issue of compensation is not addressed. Point four is denied.

### Point V

Water Company contends in point five that the Circuit Court erred as a matter of law in holding that no compensable taking of an easement interest occurs if the holder of that interest is not required to completely leave the easement area and instead is required to relocate facilities from one area within the easement to another area because a taking of a compensable interest occurs whenever the holder is required to surrender any part of its occupancy rights under the easement. Water Company claims that it will have to surrender part of the ten-foot area within the Private Easement area that it is occupying to accommodate the construction of the new levee. It argues that relocating within the same easement amounts to a taking and is, therefore, a compensable interest.

 An easement gives the grantee an interest in the property of the grantor and thus runs with the land and is binding upon successive landowners. *Borton v. Forest Hills Country Club*, 926 S.W.2d 232, 234 (Mo.App. E.D.1996) (citing *Gilbert v. K.T.I.*, 765 S.W.2d 289, 293 (Mo.App. W.D.1988) (citing 28A C.J.S. § 7 Easements)). "Although an easement is an in-

terest in land, it is not an interest in the 'title' to the real estate that is subject to that easement." *Blackburn,* 57 S.W.3d at 385 (quoting *Schrieber v. Aslinger,* 11 S.W.3d 816, 819 (Mo.App. S.D.2000)). Rather, it is a right to use the land for a particular purpose. *Schrieber,* 11 S.W.3d at 819 (quoting *Smith v. Santarelli,* 355 Mo. 1047, 199 S.W.2d 411, 412 (1947)).

■ The agreement between Water Company and Line Creek Properties establishes that Water Company's occupancy interest in the Private Easement area is an easement. The document conveying the easement is titled "easement," purports to grant Water Company a ten foot wide permanent easement, and does not give Line Creek Properties, the grantor, the right to revoke Water Company's occupancy interest. The agreement gives Water Company the right to use Line Creek Properties' land for the purpose of "construct[ing], replac[ing], renew[ing], and maintain[ing] a water line or lines . . . ." Accordingly, Water Company's interest in Line Creek's property is an easement.

■ When a utility's right to construct and maintain its utility equipment is premised upon an easement, the utility is not responsible for the costs of relocating its equipment. *Panhandle E. Pipe Line Co. v. State Highway Comm'n,* 294 U.S. 613, 617–18, 55 S.Ct. 563, 565–66, 79 L.Ed. 1090 (1935). In *Panhandle,* the United States Supreme Court held that a pipeline company could not be compelled, without compensation, to relocate or alter its distribution lines to make way for construction of a highway across its private right-of-way. *Id.* Because the distribution lines were located on a permanent easement, the State's interference with the pipeline company's property rights constituted a taking. *Id.* Similarly, in this case, Water Company cannot be compelled to relocate its occupancy interest in the Private Ease-

ment area without compensation from Levee District. Subpart A of Water Company's fifth point on appeal is granted.

In subpart two of the fifth point, Water Company claims that Levee District's condemnation of Water Company's existing locations within the public right-of-way areas will deprive it of those occupancy interests. This argument was extensively addressed in point two of this opinion and is not readdressed here. Under subpart three of its fifth point on appeal, Water Company claims that Levee District's condemnation of the Railroad License and Water Company's existing location deprives it of a compensable occupancy interest. Water Company made this argument under point three. As this argument was already addressed in great detail under point three of this opinion, it is not discussed again here. Subparts two and three of the fifth point on appeal are denied.

### Point VI

In its sixth point on appeal, Water Company makes the following claim: "that the Circuit Court erred as a matter of law in holding that a utility's costs for relocation of its facilities are not compensable in condemnation because a utility is not required to shoulder such costs for relocation from a public right-of-way unless the relocation is necessitated by roadway needs, it is not required to bear such costs for relocation from a private license unless the licensor has demanded the relocation, for reasons precluding condemnation and it is not required to bear such costs for relocation from or within a private easement because relocation essentially destroys an existing occupancy which has a value at least commensurate to the relocation costs." Water Company claims that the Circuit Court's reliance on *State ex rel. State Highway Commission v. Lynch,* 471 S.W.2d 261, 266

(Mo.1971), in holding that Water Company's occupancy interests were not entitled to compensation in a condemnation proceeding is misplaced. It claims that the ruling was erroneous, as a matter of law, because buried utility lines are not synonymous with removable equipment and fixtures. Water Company also reiterates its argument that a utility does not have to bear the relocation costs of utility equipment in public rights-of-way when the relocation is compelled by something other than roadway improvements or maintenance. As this last argument has been extensively addressed under points two and three of this opinion, it will not be addressed again under point six.

Water Company claims that the *Lynch* decision is inapplicable to this case because buried utility lines do not constitute personal property. Personal property is defined as "any movable or intangible thing that is subject to ownership and not classified as real property." *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 600 (Mo.App. E.D.2000) (quoting BLACK'S LAW DICTIONARY 1233 (7th ed.1999)). A buried utility line constitutes personal property because it is a movable piece of property that does not constitute real property. "[T]he expense of removal of personal property from condemned realty was 'not to be estimated as a distinct element of damages.'" *Lynch*, 471 S.W.2d at 266. Water Company's relocation of its buried utility lines is not compensable in condemnation proceedings because they constitute personal property.

Water Company claims that it is entitled to compensation for being compelled to relocate its utility lines because utility distribution lines are inextricably tied to the locations in which they are installed. It cites *State ex rel. Missouri Highway and Transportation Commission v. Muster-*man, 856 S.W.2d 121, 123 (Mo.App. E.D. 1993), in support of this proposition. *Musterman* does not, however, apply to this case. In *Musterman*, the Highway Commission condemned property used by the landowners as a business, namely as a riding stable and boarding house for horses. *Id.* at 122. The landowners claimed that they were entitled to condemnation damages consisting of lost business profits. *Id.* The court noted that although as a rule, evidence of business profits are inadmissible as to the value of the property, an exception exists when "there is a total taking of the property and the business is inextricably related and connected with the land so that an appropriation of the land constitutes an appropriation of the business." *Id.* at 123. Water Company's reliance on this case is misplaced. The *Musterman* court concluded that evidence regarding the value of the business was separate from the fair market value of the property and inadmissible in a condemnation case. *Id.* Because Water Company's argument is not based on profits but on the location of its utility line, the *Musterman* case is not controlling.

Water Company's final argument in point six is that the condemnation doctrine established in *State ex rel. Missouri Cities Water Company v. Hodge*, 878 S.W.2d 819, 822 (Mo. banc 1994), applies to this case. In *Hodge*, the court noted that

[P]roperty already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in each case insufficient.

*Id.* at 821 (quoting *State ex rel. State Highway Comm'n v. Hoester*, 362 S.W.2d

519, 522 (Mo. banc 1962) (quoting 29 C.J.S. *Eminent Domain* § 74 at 861–62)). This doctrine does not apply to this case for two reasons. First, Water Company has not exercised its condemnation powers. Its occupancy interest in six of the seven areas is a license. The authority in charge of each of these six areas gave Water Company a license to use the property. No conflict exists here because Water Company has not exercised its condemnation powers. Whether the doctrine would apply had Water Company condemned the property in these six areas is not addressed. Second, the entities granting Water Company a license in these six areas, respectively the Highway Commission, the City of Riverside, and BNSF, have the power to revoke the license each has granted at any time. As noted previously, a licensee is not entitled to compensation in a condemnation proceeding. *Johnson,* 592 S.W.2d at 857.

As discussed under point four, an easement is an interest in land and compensable in condemnation. *126.24 Acres of Land,* 572 F.Supp. at 834. Because this issue is addressed under point five of this opinion, it will not be reconsidered here. Point six is denied.

### Conclusion

For the reasons stated in this opinion, the Circuit Court's judgment is affirmed in part and reversed in part. The portion of the Circuit Court's judgment finding that Water Company's private easement is not compensable is reversed, and the case is remanded for further proceedings consistent with this opinion. All other portions of the Circuit Court's judgment are affirmed.

All concur.